UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                             :

GLENN JOHNSON,                :

                      :

               Plaintiff,       :

                      :             15cv403

              -against-       :

                      :           <u>OPINION & ORDER</u>

CORRECTION OFFICER SARAN     :
PERRY, *et ano.*,              :

                      :

                      :

              Defendants.    :

                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

          Plaintiff Glenn Johnson moves for a new trial pursuant to Federal Rule of Civil

Procedure 59.  Johnson claims that the jury verdict was against the weight of the evidence and

that this Court erred by declining to give an adverse inference instruction and excluding evidence

of Correction Officer Perry's disciplinary history.  For the reasons that follow, Johnson's motion

is denied.

BACKGROUND

          In January 2015, Johnson, acting <u>pro se</u>, brought this claim of excessive force

under 42 U.S.C. § 1983.  (Complaint, ECF No. 2 at 3.)  He alleged that on August 20, 2014,

while incarcerated at the George Motchan Detention Center ("GMDC") on Rikers Island,

Defendants sprayed him with oleoresin capsicum ("OC") spray[1] and physically pinned him to

the floor.  See <u>Johnson v. City of N.Y.</u>, 2016 WL 7335663, at *1 (S.D.N.Y. Dec. 16, 2016).

---

[1] Oleoresin capsicum is the chemical agent commonly referred to as pepper spray.

In August 2017, this Court appointed trial counsel for Johnson. In the highest

tradition of this district, the law firm of Arnold & Porter Kaye Scholer LLP accepted the

appointment. Attorneys from that firm rigorously prosecuted Johnson's claims and did an

exceptional job for their client. Trial commenced on October 17, 2017.

On cross-examination, Johnson testified that while walking in GMDC, a non-party Correction Officer

ordered Johnson to button his shirt. (Trial Transcript, ECF No. 124–25 ("Trial Tr.") 38:22–39:4,

42:9–11.) According to Johnson, Correction Officer Perry directed Johnson to stand against the

wall and sprayed him with OC. (Trial Tr. 43:12–16.) Correction Officer Rodriguez then tackled

Johnson to the floor and Perry sprayed him a second time. (Trial Tr. 44:2–11.) Johnson denied

resisting during this encounter. (Trial Tr. 44:22–24.)

On cross-examination, Johnson admitted to a history of schizophrenia and trouble

recalling details of the incident at issue in this case. (See, e.g., Trial Tr. 76:1–2; 85:2–8.) The

jury also learned that Johnson had three prior convictions for fraudulent accosting in the last ten

years.[2] (Trial Tr. 88:1–16.)

Rodriguez testified that after a correction officer ordered Johnson to button his

shirt, Johnson raised his voice and began cursing. (Trial Tr. 103:15–20.) Other correction

officers corroborated this testimony. (Trial Tr. 159:12–15, 196:20–197:8.) Johnson threw

papers at Rodriguez and began violently swinging his arms. (Trial Tr. 105:6–17.) After warning

Johnson to calm down, Perry sprayed him. (Trial Tr. 106:1–5.) The first OC application did not

---

[2] In New York State, fraudulent accosting is a class A misdemeanor and occurs when someone "accosts a person in a public place with intent to defraud him of money or other property by means of a trick, swindle or confidence game." N.Y. Penal Law § 165.30.

subdue Johnson, so Perry sprayed him again. (Trial Tr. 182:6–7.) In the ensuing struggle,

Johnson, Rodriguez, and Perry all fell to the floor. (Trial Tr. 182:10–11.) Johnson continued to

resist, forcing Rodriguez to apply a control hold in order to handcuff him. (Trial Tr. 106:23–

107:13.) Rodriguez and Perry convincingly described these events. (See Trial Tr. 163:16–

167:13, 179:11–181:3.)

On October 18, 2017, the jury returned a verdict in favor of Defendants, finding

that neither Perry nor Rodriguez used excessive force. (Verdict Form, ECF No. 121.)

### LEGAL STANDARD

Federal Rule of Civil Procedure 59 allows a court to grant a new trial "after a jury

trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court." FED. R. CIV. P. 59(a). "A motion for a new trial ordinarily should not be granted

unless the trial court is convinced that the jury has reached a seriously erroneous result or that the

verdict is a miscarriage of justice." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623

(2d Cir. 2001) (internal citation omitted). A court may also grant a new trial "if substantial

errors were made in admitting or excluding evidence, or in charging the jury." In re Vivendi

Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 573 (S.D.N.Y. 2011). Under Rule 59, "a trial

judge is free to weigh the evidence himself, and need not view it in the light most favorable to

the verdict winner." Manley v. AmBase Corp., 337 F.3d 237, 244–45 (2d Cir. 2003). However,

"a court should rarely disturb a jury's evaluation of a witness's credibility." DLC Mgmt. Corp.

v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).

DISCUSSION

A. Whether the Jury's Verdict was Against the Weight of the Evidence

The jury in this case had to make a judgment call between two competing

narratives. Johnson asserted that Defendants' use of force was entirely unprovoked. The

Defendants maintained that the use of force was necessary in light of Johnson's behavior.

There were many reasons to doubt Johnson's testimony. The jury heard about

Johnson's long history of mental illness. (Trial Tr. 76:1–2, 85:2–8.) They also learned that he

was convicted of fraudulent behavior on three previous occasions. (Trial Tr. 88:1–16; footnote 1

supra.) Johnson could not independently corroborate his testimony. Finally, the evidence

established that contrary to what Johnson claimed at trial, medical records created immediately

after the incident showed that Johnson suffered no injury. (See Trial Tr. 60:20–63:24.) In short,

the jury was well within its discretion to credit Defendants' account of events over Johnson's.

The jury's determination that Defendants had not used excessive force was not

against the weight of the evidence. Excessive force depends on the "facts and circumstances of

each particular case." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (internal quotation

omitted). A host of factors bear on this determination, including:

> the relationship between the need for the use of force and the amount of
> force used; the extent of the plaintiff's injury; any effort made by the officer
> to temper or to limit the amount of force; the severity of the security
> problem at issue; the threat reasonably perceived by the officer; and whether
> the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473. A jury may also consider "the legitimate interests that stem from

the government's need to manage the facility in which the individual is detained," including the

4

need "to preserve internal order and discipline." Kingsley, 135 S. Ct. at 2473 (internal quotation and alteration omitted).

Here, the jury heard that Johnson was wildly swinging his arms towards Rodriguez. (Trial Tr. 123:21–22.) Perry found this to be an immediate threat that required her to discharge OC spray. (Trial Tr. 181:4–7.) The first discharge did not have its intended effect— Johnson continued his outburst. (Trial Tr. 107:8–11.) Thus, Perry sprayed Johnson a second time. (Trial Tr. 182:2–7.) When the parties fell to the floor, Johnson continued "kicking" and "bucking." (Trial Tr. 111:5) Rodriguez applied a control hold to protect Perry and himself. (Trial Tr. 111:5–6.)

Johnson's counsel focused heavily on whether Defendants' actions violated Department of Corrections policies and procedures. But "local agency-established policies . . . do not establish constitutional standards." Cerbelli v. City of N.Y., 2008 WL 4449634, at *10 (E.D.N.Y. Oct. 1, 2008) (citing Poe v. Leonard, 282 F.3d 123, 146 (2d Cir. 2002)). "The continuum along which the excessiveness of force . . . is assessed is not marked by visible signposts. A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Brown v. City of N.Y., 798 F.3d 94, 103 (2d Cir. 2015). There is simply no blanket rule supporting Johnson's contention that the Defendants' use of force necessarily violated a constitutional standard. That determination is one for a jury, and here, the jury did not reach "a seriously erroneous result." See Hugo Boss Fashions, Inc., 252 F.3d at 623.

B.  Denial of Adverse Inference Instruction

Johnson challenges this Court's denial of an adverse inference instruction. Throughout this litigation, Johnson alleged that video surveillance had captured the incident and that defense counsel failed to produce it.  (See Joint Proposed Jury Instructions, ECF No. 96-1 ("Proposed Jury Instructions") at 13–14.)  Johnson's counsel requested a "permissive adverse inference instruction," meaning that this Court inform the jury that if they found Defendants failed to produce relevant video surveillance footage, the jury may, but was not required, to infer this evidence would have been unfavorable to Defendants.

Unlike an instruction that a jury should or must find that missing evidence would have been unfavorable (a mandatory adverse inference instruction), a permissive adverse inference is not a sanction per se, but rather part of a court's "explanation of circumstantial evidence, on inferences the jury [is] free to draw depending on the jury's findings."  Mali v. Fed. Ins. Co., 720 F.3d 387, 392 (2d Cir. 2013).

Before issuing an adverse inference instruction, a court must make "factual determination(s) that would warrant giving" such an instruction, and the ultimate decision always "lie[s] within the discretion of the court."  DeCastro v. Kavadia, 309 F.R.D. 167, 182 (S.D.N.Y. 2015); see also Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge.").  Even a permissive adverse inference instruction is a severe remedy, as it informs the jury of a party's potential misconduct, which "may be difficult for the sanctioned party to overcome."  DeCastro, 309 F.R.D. at 182.

At trial, Johnson's counsel thoroughly explored whether video footage of the incident existed. (See, e.g., Trial Tr. at 100:13–24 101:17–102:20, 125:22–126:8, 158:11–21.) A Department of Corrections investigator testified that after searching for all relevant video footage, he determined that no footage showed any aspect of the physical altercation between the parties. (Trial Tr. 212–14, 216–18, 224 –27.) Johnson was unable to establish otherwise. There was no evidence supporting his contention that relevant evidence had been spoliated. The most that he established was that video cameras existed in the vicinity of the altercation, and that video footage existed showing "Mr. Johnson walking through the metal detector" and "an escort officer [standing] near the metal detector" sometime before the incident. (Trial Tr. 213:7–11.) Therefore, this Court was well within its discretion in declining to give an adverse inference instruction.

But even if this instruction had been given, Johnson cannot establish that it would have altered the jury's verdict. The most that the jury would have considered is that there may have been video footage showing Johnson in the vicinity of Defendants. It is unclear why this would have altered the jury's determinations of credibility and whether Defendants' use of force was excessive. Moreover, in his summation, Johnson's counsel argued extensively about the possibility of video footage. (See Trial Tr. at 243:13–244:18) ("We don't have the footage. We know at one point . . . it existed. Make what you will of that, ladies and gentlemen.")

C. Exclusion of Perry's Disciplinary History

Lastly, Johnson challenges this Court's in limine ruling excluding an unrelated use of force incident by Perry. That incident occurred in January 2017 and allegedly consisted of

Perry "hit[ting] an inmate with her radio."  (Hearing Transcript, ECF No. 128 9:8–9.)  Johnson's counsel claimed that this incident demonstrated Perry's "wrongful intent to abuse" her position.

Evidence of a crime, wrong, or other act, may not be used "to prove a person's character," but may be used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b).  A court has wide discretion to admit evidence under Rule 404(b).  United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993).

Johnson's counsel was unable to establish the probative value of this incident.  It occurred three years after the incident described at trial and was entirely dissimilar from it. While Johnson's counsel proffered that it would show Perry's "wrongful intent to abuse her position," the Supreme Court recently made clear that excessive force is determined under an objective standard, making a defendant's state of mind irrelevant.  See Kingsley, 135 S. Ct. at 2472, 2475 ("[T]he defendant's state of mind is not a matter that a plaintiff is required to prove.").

Therefore, this Court was well within its discretion in holding that this incident would be irrelevant and substantially more prejudicial than probative.  Cf. Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991) (court was correct to exclude prior complaints against police officer when it was mainly a "veiled attempt" to demonstrate propensity and was not similar enough to demonstrate a "unique scheme").

## CONCLUSION

For the foregoing reasons, Johnson's motion for a new trial is denied. The Clerk

of Court is directed to terminate the motion pending at ECF No. 134.


Dated: January 30, 2018
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.